at all. Arguments not to exceed 15 minutes per side. Good morning, your honors. May it please the court, my name is Gina Pizzoli and I represent the appellants, Corporals Gina Starczak and Corporal Christina Korn. I respectfully request that this court allow me three minutes in rebuttal time. This appeal is from the district court denial of qualified immunity to these two officers who were merely assisting Drano in the execution of a judicially secured search warrant. Appellants have accepted the appellee's version of the facts for purposes of their motion for a jury judgment as well as for purposes of this appeal. That version is that Corporal Kantz, an officer who was working for Drano during the search, called Sergeant Neal. Sergeant and had grabbed marijuana plants out of the yard, took them into the house and spoke to the individuals for a couple of minutes. There is absolutely no evidence that has been produced by the appellees that this information was transferred to either Corporal Gina Starczak or Corporal Christina Korn at any time while they were in the house. The issue here is whether given the set of these facts, whether the law was clearly established and whether these officers are entitled to qualified immunity. I believe that appellees and the appellants both agree upon the case law regarding this matter. The district court based its decision clearly on Ms. Lukaj's testimony that the canine sweep of the basement and master bedroom occurred after Officer Kantz, this is Officer Kantz, another officer, ended her conversation with Sergeant Neal, which was over the telephone. There is not even any evidence in the record that Corporal Starczak or Corporal Korn were privy to the phone conversation, were near the phone conversation, or even knew what Corporal Kantz was doing when she was talking to Sergeant Neal. But Kantz did say she called off the search, right? Pardon me? Kantz did call off the search. She did not call off the search. Lieutenant Paisano was in charge for Drano and there is no evidence that he called off the search at that time and that these officers continued to conduct the canine sweep. I know that was pointed out in the appellee's brief. I have been through this record. I have been to all the depositions. That was not something that I recall ever being testified to or any evidence being produced to support that allegation. So you're saying there's no evidence at all that your clients knew anything about calling off the search? Yes, Your Honor. That's correct. And I think it's clear by the lower court's opinion as well. The court stated at page ID number, in the opinion 1091, Sergeant Neal notified Officer Kantz of the true circumstances of the call for service for the Luke High House. And then at page 1078, the lower court stated that Sergeant Neal notified her that he had been at the Luke High residence 30 minutes prior and had removed marijuana plants from the property. Now the lower court also astutely noted in its opinion at page ID number 1082 that plaintiff's amended complaint and response brief do not detail the conduct of each defendant officer with respect to many of the claims and often attribute the actions of one officer to all of the defendant officers. So the district court did note that in its opinion at page ID number 1082. However, it then in its analysis attributed what Corporal Kantz knew to Corporal Korn and Corporal Starzak. The law is clear that each of these officers is entitled to a testimony. And I pointed out to the district court that in fact the testimony that we accept from Ms. Luke High is she didn't talk to Corporal Korn before the canine sweep. She testified that Corporal Korn was her only ally that day. She knew her from high school. And she testified that she did not know what Corporal Korn knew when conducting the canine sweep. Now the defendants, the appellants, have pointed out that there's no evidence that these officers knew that there had been a mistake. So it is up to the appellees to now show why these two officers are not entitled to qualified immunity under those circumstances. They rely on their allegations which have not been supported by the record. And that is the reason for this appeal. In addition, I'd like to point out the information provided by Sergeant Neal to Corporal Kantz, even assuming that the information is that, hey I was there 30 minutes earlier and I picked up marijuana plants at that address. How does that equate to a mistake in the search warrant? I don't believe it is, it does, I believe it is what it stands for that he was there and he took marijuana plants out of that house. The district court said there was a question of fact that has to be decided. Is that a mistake on the part of the district court? We submit it is, Your Honor, based on the record and based on the court's opinion of attributing Corporal Kantz's knowledge to Corporal Korn and Corporal Starczyk without any evidence that that knowledge was transferred to those two officers. In addition, I'd just like to point out, I know the Prey case versus Sandusky was relied upon here and in the Prey case, I would submit that it actually supports the appellant's position here. The Prey case, however, did involve differing versions of fact. And in the Prey case, the officers who were denied qualified immunity admitted in their testimony they knew immediately when the door was broken down that they had the wrong house. We don't have that here. There's no differing version of facts. We are accepting the facts that maybe at that time Corporal Kantz was told by Sergeant Neal that he had been there. But there's absolutely no evidence that Corporal Korn and Corporal Starczyk received that knowledge. Additionally, in the Prey case, the court did state that any search that occurred while the officers were under the mistaken belief, but reasonable belief, that they were in fact executing a warrant, they would be protected by qualified immunity. They were told by the superior officers that the search was called off and they didn't have any right to go ahead and continue the search, right? The law is clear that if they were told that there was a mistake and they knew there was a mistake and that they would have an obligation to retreat, certainly. But that's not the given set of facts here. We have to look at this case on based on what they knew and what they knew only. They're entitled to their own assessment of liability. And again, based on Ms. Lukai's own testimony, she has no evidence that these officers knew anything regarding the search. Nobody has testified in this case that Corporal Kantz or the lieutenant in charge of the raid told these two officers either to stop the search after Corporal Kantz got off the phone or that there was a mistake with the warrant. In fact, Corporal Kantz testified that she didn't even know what she had when she learned the information, that pot plants were picked up earlier, until she got back to the station and could check the call for service. So unless there's any questions... Just a quick question. So Ms. Lukai, is that how the name is pronounced? Yes, Your Honor. Ms. Lukai did testify in a deposition. Am I correct that she did testify that this K-9 search occurred after, I guess it was Officer Kantz concluded his conversation, or her conversation with Officer Seale? She did. And we accept that for purposes of this appeal, certainly. And there's no doubt in the record, as I understand it, that Corporals Starczak and Korn did conduct a K-9 search of the premises, the basement and the master bedroom. There was a K-9 sweeper that ran the dog food, correct. There's no dispute on the record of that. The only dispute is what did these officers know, Corporals Korn and Starczak? And there is absolutely no evidence that a police have come forth with to create a genuine issue of fact to deny these officers qualified immunity. Was there something in the record, and I'll have to go back and look, where there was evidence that, I guess it would have been Pisano as opposed to Kantz called off the search based upon, presumably, Kantz's conversation with Neal? I did see that allegation in the appellee's brief. Okay. There is no support in the record that after the conversation between Kantz and Neal, that Lieutenant Pisano immediately said, we're calling off the search. And there's no evidence that after he called off the search, Corporals Korn and Starczak continued to search. They were merely assisting in the execution of this warrant. They weren't part of Drano. They were asked to assist. And this case is more akin to Davison versus Frey, where they are assisting in the search pursuant to a valid judicial warrant, search warrant. Is there anything in the record that shows that Officer Pisano ever called off the search? Yes, he did. But if you recall Ms. Lukaj's testimony as well, she also stated that after the time that Corporal Kantz had the conversation with Sergeant Neal, they sat her on the ottoman and then they, again we're talking about a group of defendants, unidentified, took her into the kitchen, got a piece of mail. So I believe that's evidence to support that the search wasn't called off at that point. But I'm really going on the record in what's undisputed. And there's no room for speculation. That's the whole purpose of qualified immunity. What is fair? What is fair to these police officers? And what's fair is to only charge them with what they know. You can't deny them this qualified immunity if in fact there's no evidence that they knew that there was this mistake. Okay. Thank you very much. Thank you very much for your argument. You have saved some rebuttal time, I take it. I did. Okay. I don't know if I'll take it, but thank you. Okay, sure. May it please the court. Janet Knapp appearing on behalf of Victor and Megan Lukai and Floodline Tatkan and Stavalin. It's a pleasure to be here, your honors. This case has a relatively torturous history. It's not torturous in terms of procedural issues like some cases are, but it's torturous in terms of what happened. The warrant was, the execution of the warrant, the getting of the warrant was a citizen's worst nightmare. It was based on an error. An error and a failure to follow up. It can't be said any other way. And because of that, the people who were the complainers about the marijuana were turned into the purveyors of the marijuana. And that really was the problem here. The issue does involve a Fourth Amendment violation that occurred when it did become readily apparent the officers who were executing the search warrant were doing so upon a mistaken belief. When they entered that home and Megan Lukai, they talked to Megan Lukai, it was clear she came and got the marijuana. We are the ones who made the report. We are the ones who made the report. To the officers' credit, they did ultimately get the card that was on the dresser in the master bedroom and they called. Lieutenant Pisano told Cants to call and Cants did. What's your best evidence to show that these two remaining defendants knew about the warrant being called off before they had the sweep by the canines? That's the big issue here. Yes, Your Honor, it is. Well, I think there is a genuine issue of fact as to that matter. In looking at Megan Lukai's deposition, she specifically testified that Christina Korn heard the conversation. And she said that Korn was standing there and listening to the conversation at a distance of about 10 feet away from her. Korn was standing with a male officer and a female officer and at that time also there were three to four officers who were talking about the business card and arguing amongst themselves and after that scenario the canine search was done. What did she say that Korn learned? She couldn't know what Korn learned but it was when all of that was transpiring about the call and Cants calling Neal and reporting back that something bad had happened. So you have to infer that what she heard was that the warrant is called off, the search is called off. Prior to the canine search. Prior to the canine search that she knew that it was based upon a mistaken belief. You have to infer that that's what was being said. Well nothing, it's clear that I can see nothing was specifically said to her. I mean I have to be honest about that. I don't think anything was specifically said to her. Nothing was specifically said to Korn? To Korn. Yeah. But I do, but if you look at the circumstances and you have to think about what was happening in that house and the scene was basically frozen and they weren't going through all of the warrants, going through drawers and looking wherever the contraband may be found or the ledgers or whatever they're looking for. They, to their credit, they halted and they investigated. And it's that conversation that the deposition says that Christina Korn heard. And that's according to Megan Lukai. Did one of the other officers say he or she told Korn at that particular moment that the search is being called off? My recollection is that Pisano called off the search. But it's also clear that the search was abandoned. It was abandoned. Because they didn't fully execute that warrant like they always do. But did Pisano say that it was told to Korn or Starzak? There's nothing in the record that specifically says it was told to these particular officers. Well, if the case went to trial based upon that evidence, there wouldn't be enough to have a claim against these two officers, would there? Well, I think there would be. Because if Korn was privy to that conversation where they were talking about the phone call She didn't say she was, did she? She didn't say she was, but Megan Lukai specifically testified in her deposition that she heard the conversation. Not she, Megan Lukai heard the conversation. That Christina Korn heard the conversation. But she wouldn't say what was in the conversation, right? She was not asked that question. And the conversation we're talking about is the conversation between Neal and Kantz? No, the conversation would be post-Neal, post-Neal Kantz. So it would be between Kantz and Pisano? And the officers standing there. Because apparently there were a number of officers standing there. That were largely unidentified. I guess the question is being asked, what gets you past the motion if this goes to trial? For the defense. I don't know how you keep these two in the lawsuit. Well, I think just that. I think it's clear from the facts that the K-9 search was done after. I don't think anybody's disputing that. The question is, what's the proof that these people conducting the K-9 search knew that it had been called off at the time they do the K-9 search? Well, the search, nothing but the K-9 search was being done. That's highly unusual in the execution of a drug search warrant. Highly unusual gets you to the jury? I'm sorry? Highly unusual gets you to the jury? Well, I think you have to put all the facts together. You have to put all the facts together. And I think that, the fact that it was abandoned. The fact that Ms. Korn heard the conversation according to Ms. Lukai. All the facts have to be put together. Well, the issue is, was it reasonable under the circumstances? Was it objectively reasonable? Would an officer act that way? Well, an officer would act that way if he or she thought there was a valid warrant and was called in by superiors to execute the warrant. That would be reasonable, wouldn't it not? I think that would, yeah. Yes, Your Honor, I do agree that would be reasonable. So the only thing that's unreasonable is if the officer knew that it was called off and continued with the search. Yes. That's what your cause of action is. Yes, that's it precisely. But we don't really have very strong evidence or any evidence at all about that from what you're saying. Well, the evidence... That Ms. Lukai overheard Korn talking to these other officers. She doesn't know what to say. And nobody admits they told her. That's accurate. I can't... I can't say it's a terrible case for the plaintiffs alone. But it's, you know, we have to go with what the law is here, obviously. Does the court have any further questions? So it seems like the case is even tougher against Officer Strzak then, right? Because as I understand it, your argument is that Ms. Lukai heard the conversation between Officer Kent and some identified officer essentially saying, following the conversation with Neal, Yes. that this was all a mistake and that Korn heard that conversation. Yes. How do we reach an inference that Strzak knew that this was all a mistake and we have to infer that Korn told her, I suppose. Is that correct? To be honest, there is a paucity of evidence on Corporal Strzak. Although she was the one who initially made the mistake in the warrant. But it's clear when you look at all the facts together that they acted in concert. And I think that's the basis of it. They didn't act... When officers enter a home on a raid, they don't act individually. They act as a raid team. In fact, they're called a raid team. And they act in concert. They act in concert to get the job done and for their own safety and for many other reasons. And here, the same thing is that they acted in concert. Okay. Thanks.  Thank you.